**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Anthony Moore, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Leann Bertsch, Timothy Schuetzle, Shaun | ) | |
| Fode, Wade Strand, Deven Hiasy, | ) | |
| Kathleen Bachmeier, John J. Hagan, | ) | |
| Robert Heier, and Jason Braggee, in their | ) | |
| individual and official capacities, | ) | Case No. 1:09-cv-027 |
| | ) | |
| Defendants. | ) | |

Plaintiff Anthony Moore initiated this action on June 1, 2009, by filing a civil rights complaint under 42 U.S.C. § 1983. On June 15, 2009, he filed an application to proceed *in forma pauperis* and several motions, including a motion to a disqualify all of the federal judges in the District of North Dakota and a motion requesting that this matter be heard by a judge from outside the district.

Moore is an inmate at the North Dakota State Penitentiary ("NDSP"). He is subject to the "three strikes" bar set forth in 28 U.S.C. § 19159(g)

The following sets forth the undersigned's recommendation with respect to the motions for reassignment and disqualification, application to proceed *in forma pauperis*, and case screening pursuant to 28 U.S.C. § 1915A.

1

I.  **SUMMARY OF MOORE'S CLAIMS**

Moore's complaint asserts the following claims:

Claim 1:  Moore is being subjected to "imminent danger of serious physical injury by NDSP employees and officials because he is continuing to be held in administrative segregation despite having excruciating lower back pain in spinal column, tremendous pain in right foot, calf and upper inner and outer thigh areas and atrophy."

Claim 2:  NDSP employees and officials opened Moore's legal mail on two occasions outside of his presence and have refused to adhere to their policy on prisoner incoming mail.

Claim 3:  NDSP employees and officials have deprived Moore of due process by failing to adjudicate a Class B infraction report within 7 working days as required by NDSP's policy.

Claim 4:  NDSP employees and officials have deprived Moore of due process and equal protection by finding him guilty on two separate occasions of Class B infraction reports with no evidence to support the convictions.

Claim 5:  NDSP employees and officials have unconstitutionally retaliated against Moore on account of his having submitted a complaint against an NDSP employee to the National Center for Missing and Exploited Children.

Claim 6:  NDSP employees and officials have acted with deliberate indifference to alleged serious medical needs by refusing to diagnose and treat Moore for the alleged excruciating pain and suffering in his right foot, calf and upper inner and outer thigh areas, and lower spinal column.[1]

Moore's complaint names as defendants Director of the North Dakota Department of Corrections and Rehabilitation ("NDDOCR") Leann Bertsch, NDSP Warden Tim Schuetzle, some ten other NDSP officials and staff.[2] He states he is suing all of the defendants in their official and

---

[1] Moore also alleges that NDSP employees and officials have placed him in imminent danger of serious physical injury because of all of the claims contained in the complaint and requests that none of the federal judges in this district act on his complaint.

[2] There appears to be more persons identified in the body of the complaint as defendants than are named in the caption.

individual capacities. For relief, Moore requests $10,000, medical treatment, and release from administrative segregation.

## II.     GOVERNING LAW

### A.     PLRA's § 1915A screening

Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA") to address the burdens imposed by prisoner suits that too often are frivolous and without merit. Jones v. Bock, 549 U.S. 199, 202-203 (2007); Woodford v. Ngo, 548 U.S.81, 84 (2006). One of the reforms enacted as part of the PLRA for cases in which prisoners are seeking to sue a governmental entity, officer, or employee is the requirement that courts conduct an early screening to weed out claims that clearly lack merit. 28 U.S.C. § 1915A. In conducting the screening, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant. Id.

In enacting the PLRA, Congress chose not to impose a heightened pleading requirement for prisoner complaints, and, in this case, 42 U.S.C. § 1983 also does not impose any such requirement. Jones v. Bock, 549 U.S. at 212-217. Consequently, to state a cognizable claim, the complaint needs only to meet the minimal requirements of Fed. R. Civ. P. 8(a), which are that it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. __, 127 S.Ct. 2197, 2200 (2007) (per curiam); see id. In addition, when a prisoner is proceeding *pro se*, the court is obligated to construe the complaint liberally and hold it to a less stringent standard than what would be required of attorneys. Id.

But, this does not mean, however, that the court must accept anything and everything that is filed by a *pro se* prisoner. In enacting the screening requirement, Congress expected it to be more

3

than a ritualistic exercise and that the courts would be vigilant in allowing prisoners to proceed only with those claims that state a cognizable claim, that seek relief from a non-immune party, and that are not obviously baseless, frivolous,[3] or malicious.

To meet the minimal requirements of Rule 8(a)(2) for pleading a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 n.3 (2007). The complaint must state enough to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S.Ct. at 2200 (quoting Twombly, 550 U.S. at 555). Conclusory and formulaic allegations of the elements of a cause of action are not sufficient. The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 US at 555-556).[4]

---

[3] "A complaint is frivolous if it lacks an arguable basis in law or fact." Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992) (citing Nietske v. Williams, 490 U.S. 319, 325 (1989)). "It lacks an arguable basis in law if the claim is based on an indisputable meritless legal theory." Id. And, in terms of whether there is an arguable basis in fact, the court may disregard any factual allegations that are clearly fanciful, fantastic, or delusional. See Denton v. Hernandez, 504 U.S. 25, 32-34 (1992); Edwards v. Snyder, 478 F.3d 827, 229-830 (7th Cir. 2007) (discussing the difference between factual and legal frivolousness).

[4] In Ashcroft v. Iqbal, the Supreme Court further elucidated upon the "plausibility" requirement, stating:
As the Court held in Twombly, . . . the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." . . . . Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." . . . .
    To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct allege. . . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "
    . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . . But where the well-pleaded facts do not permit the court to infer

In the case of an action for a violation of federal civil rights under 42 U.S.C. § 1983, this means a plaintiff must allege a violation of a right secured by the Constitution or the laws of the United States and that the violation was committed by a person acting under color of state law in order to state a cognizable claim. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157-158 (8th Cir. 1997). Also, the pleading must allege a sufficient causal link between the alleged violation and the basis upon which a particular defendant is to be held responsible, keeping in mind that persons sued in their individual capacities for damages must be personally involved or directly responsible since § 1983 does not impose *respondeat superior* liability. Ashcroft v. Iqbal, 129 S.Ct. at 1948; Gordon v. Hansen, 168 F.3d at 1113.

Finally, even though the court is obligated to construe *pro se* complaints liberally, the court is not required to ignore facts that are pled by a prisoner when they undermine the prisoner's claim. The court may accept as true all facts pled in the complaint and conclude from them that there is no claim stated as a matter of law. E.g., Edwards v. Snyder, 478 F.3d 827, 830 (7th Cir. 2007); Thompson v. Illinois Department of Professional Regulation, 300 F.3d 750, 753-754 (7th Cir. 2002) (citing other cases).[5]

---

more than the mere possibility of misconduct, the complaint has alleged--but it has not "show[n]"--"that the pleader is entitled to relief."
129 S.Ct. at 1949-50 (citations omitted).

[5] In Edwards v. Snyder, the Seventh Circuit stated the following:
Complaints may be susceptible to dismissal for failure to state a claim for various reasons. For example, a plaintiff may allege too little in his complaint and fail to meet the minimal federal pleading requirements. See Fed. R. Civ. P. 8. Even if a complaint passes the minimal threshold of pleading standards, dismissal for failure to state a claim may be appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." Marshall v. Knight, 445 F.3d 965, 968 (7th Cir.2006); Dealt v. Carter, 224 F.3d 607, 610 n. 1 (7th Cir.2000). A complaint can also allege too much; a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery. See McCreary v. BAY, Inc., 453 F.3d 882, 888 (7th Cir. 2006).
478 F3d at 830.

### B.      PLRA's "three strikes" provision

The Prison Litigation Reform Act (PLRA) also contains what is commonly referred to as the "three strikes" provision, codified at 28 U.S.C. § 1915(g). This provision precludes a prisoner from bringing a civil action, or an appeal, *in forma pauperis* if, on three or more prior occasions, the prisoner has filed an action, or an appeal, that was dismissed on the grounds that it was frivolous, malicious, or failed to state a claim. Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003); 28 U.S.C. § 1915(g).

The bar imposed by § 1915(g) does not prohibit the bringing of the civil action or appeal altogether; it simply denies the benefits of being able to proceed *in forma pauperis.* Id. Also, § 1915(g) provides for an exception, which is that the "three strikes" bar does not apply when the prisoner is under imminent danger of serious physical injury at the time of the filing of the complaint or appeal. Id.

### III.    DISCUSSION

### A.      Application to Proceed *In Forma Pauperis*

Moore, a serial litigator, has accumulated at least four "strikes" to date. See Moore v. Dahl, No.1:06-cv-096, 2006 WL 3761991 (D.N.D. Dec. 20, 2006) (no appeal taken); Moore v. United States, No. 1:07-cv-030 (D.N.D. May 16, 2007), summarily aff'd, No. 07-2484 (8th Cir. Nov. 6, 2007); Moore v. McCullough, No. 3:07-cv-056, 2007 WL 2746907 (D.N.D. Sept. 20, 2007), summarily aff'd, No. 07-3605 (8th Cir. Dec. 22, 2008); and Moore v. Hoeven, No. 1:08-cv-028, 2008 WL 1902451 (D.N.D. April 28, 2008), summarily aff'd, No. 08-2088 (8th Cir. May 15, 2009).[6]

---

[6] In Moore v. Hoeven, No. 1:08-cv-028, 2008 WL 1902451 (D.N.D. April 28, 2008), the court chronicled Moore's extensive litigation up to that point. And, this list did not include the flood of motions that Moore has filed both at the trial court and appellate levels, nor the numerous appeals from the denials of the motions, including applications for writs of certiorari to the United States Supreme Court.

As noted above, these "strikes" do not preclude Moore from filing additional actions in this court, but they do deprive him of the ability to proceed without the prepayment of the filing fee unless he is in imminent danger of sustaining serious physical injury.

In this case, Moore has pled that he is in imminent danger of serious physical injury, but the court is not required in all instances to accept conclusory allegations to that effect. Martin v. Shelton, 319 F.3d at 1050; Pennington v. Harris, No. 5:08-cv-00229, 2008 WL 4174826, at *3 (E.D. Ark. Sept. 5, 2008). This is particularly true when a prisoner has a record of previously having made allegations of suffering from serious medical conditions that the courts have determined to be fictitious or not as serious as claimed. Cf. Martin v. Crosby, 219 Fed.Appx. 599, 2007 WL 817586 (8th Cir. 2007) (unpublished per curiam); McNeil v. United States, No. C05-1975-JCC, 2006 WL 581081, at *3 (W.D. Wash. 2006).

And, Moore has such a history with this court. E.g., Moore v. Bertsch, No. 1:05-cv-098; 2007 WL 2410346 (D.N.D. Aug. 21, 2007), aff'd, 293 Fed.Appx. 434, 2008 WL 4307896 (8th Cir. 2008) (complaints of elevated amylase and small phleboliths held to be insignificant and not a serious medical condition warranting invocation of Eighth Amendment protection despite claims to the contrary); Moore v. Schuetzle, 486 F. Supp. 2d 969, 989 (D.N.D. 2007), aff'd as modified by 289 Fed.Appx. 962, 2008 WL 3891506 (8th Cir. 2008) (complaints of pain and atrophy suffered during administrative segregation not sufficient to invoke constitutional protection despite claims

---

In another Moore v. Hoeven case, Moore filed an interlocutory appeal and the Eighth Circuit remanded for a determination of whether Moore's request to proceed *in forma pauperis* should be granted. Magistrate Judge Senechal entered an order denying Moore's request, concluding that Moore had accumulated "three strikes" and referencing three of the cases cited above. Moore v. Hoeven, No. 3:08-cv-50 (D.N.D. 2009) (Order dated April 1, 2009, denying leave to proceed *in forma pauperis*). The Eighth Circuit apparently agreed with the calculation because it ordered Moore to pay the filing fee. Moore v. Heier, No. 09-1142 (8th Cir. 2009) (Order dated April 8, 2009, directing payment of filing fee).

7

to the contrary); Moore v. Schuetzle, 354 F. Supp. 2d 1065 (D.N.D.2005), aff'd, 172 Fed.Appx. 133, 2006 WL 758472 (8th Cir. 2006) (complaints of severe pain resulting from alleged abdominal, gastric, and testicular maladies and a deformed finger held insufficient to support an Eighth Amendment claim).

In this case, Moore's conclusory allegations that he is in imminent danger of serious physical injury are not sufficient. First, the wording of the allegations suggest that they are formulaic and a transparent attempt to avoid § 1915(g)'s bar. In particular, there is the implicit suggestion that his "excruciating pain" will somehow improve if he is removed from administrative segregation. See Pennington v. Harris, 2008 WL 4174826, at *3 (noting a similar dubious claim). Further, Moore claims he has been placed in imminent danger of serious bodily injury based on all of the allegations in the complaint, which, as noted above, include complaints over his mail and writeups for talking to other prisoners while performing janitorial duties. See Skillern v. Jackson, No. CV606-49, 2006 WL 1687752, at *2 (S.D. Ga. June 14, 2006) (making a similarly broad claim of imminent danger of serious bodily injury).

Second, the grievance and other prison administrative records attached to the complaint indicate that Moore has recently seen the prison's doctor and other medical staff for his pain complaints; that he recently made statements to the prison doctor and to the warden that are inconsistent with his claim of "excruciating" pain; that he has recently refused pain medication on several instances when it was offered; that he has been referred for examination to a medical specialist; and that, during the same time frame he was purportedly suffering "excruciating" pain, he was performing janitorial duties until he was suspended from that activity because of disciplinary infractions. (Doc. Nos. 5-6, 5-7, 5-11; 5-12; 5-13; & 5-14). As noted earlier, Moore references and

relies upon the attachments to his complaint in support of his claims, and there is nothing in the complaint in terms of specific facts or denials that contradict these points.[7]

In short, Moore's allegations are insufficient to demonstrate that he is in imminent danger of serious physical injury. What they do demonstrate, along with Moore's prior history, is that "plaintiff is a seasoned litigant who has read 28 U.S.C. § 1915(g) and is manipulating it to serve his ends." McNeil v. United States, 2006 WL 581081, at n.3.

For these reasons,[8] it is recommended that Moore's request to proceed *in forma pauperis* be denied.[9] See also Skillern v. Paul, 202 Fed. Appx. 343, 2006 WL 2826609, at *2 (11th Cir. 2006) (holding that inmate's statements concerning the deprivation of heart medication were vague and failed to establish an imminent danger of serious physical injury; White v. Colorado, 157 F.3d 1226, 1231 (10th Cir. 1998) (finding that "vague and conclusory" assertions of withheld medical treatment when prisoner was seen over 100 times by physician is not imminent danger); Hardy v. Michigan

---

[7] The attachments to Moore's complaint may be considered for all purposes, including determining whether the complaint states a claim for relief. E.g. Hughes v. Banks, 290 Fed.Appx. 960, 2008 WL 4065874 (8th Cir. 2008); Thompson v. Illinois Department of Professional Regulation, 300 F.3d at 754 (court may consider documents attached to a complaint that indicate the plaintiff has no claim); see Meehan v. United Consumers Club Franchising Corp., 312 F.3d 909, 913 (8th Cir. 2002); Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992) (considering documents attached to the complaint in determining that prisoner had no constitutional claim) Fed. R. Civ. P. 10(c).

[8] The undersigned also observes, but does not rely upon for his recommendation, that Moore has managed to carry on an active litigation practice, notwithstanding his claims of "excruciating pain" and imminent serious bodily injury. He has managed in this case to plead a number of claims unrelated to his alleged medical condition, assemble the relevant corresponding administrative records, and carry on frequent and timely correspondence with the clerk of court. Also, the attachments reflect that he has managed to continue to file grievances and pursue administrative prison remedies without any apparent difficulty with respect to all sorts of matters.

[9] It does not appear the Eighth Circuit has ruled on the issue of whether a prisoner seeking to invoke the "imminent danger" exception must do so on a claim-by-claim basis, or whether, once the exception is satisfied, it applies to all of the claims in the complaint. The courts of appeal that have addressed the issue so far appear to agree that the exception does not have to be satisfied on a claim-by-claim basis. See Andrews v. Cervantes, 493 F.3d 1047, 1053-55 (9th Cir. 2007) (deciding the issue and discussing cases from the 3rd, 7th, and the D.C. Circuits). The Second Circuit has noted the issue in a case deciding that there must be some nexus between the danger the prisoner alleges and the claim asserted, but left for another day the question of whether the existence of one claim satisfying the exception is sufficient to allow a prisoner to proceed IFP on other unrelated claims. Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009).

Dept. of Corrections, No. 1:07-cv-607, 2007 WL 2030106, at *2 (W.D. Mich. July 11, 2007) (court has the discretion to discredit claims of imminent danger that are "clearly baseless").

### B.  Section 1915A screening

Moore's conclusory allegations of constitutional violation are also insufficient to state a claim in light of the facts contained in the attachments to the complaint, particularly since they are not contradicted by other specific allegations of fact or denials. In addition, there are several other reasons why certain of the claims fail to state a claim. Consequently, all of Moore's claims are subject to dismissal under 28 U.S.C. §1915A. These points will be addressed below with respect to the individual claims.

#### 1.  Claims 1 & 6

The uncontradicted facts demonstrating the lack of any imminent threat of serious bodily injury as outline above also vitiate any claim of deliberate indifference on the part of the NDSP officials and employees to any medical condition Moore may have. (Doc. Nos. 5, pp. 5-6; 5-11; 5-12; 5-13; & 5-14). See, e.g., Jones v. Minnesota Department of Corrections, 512 F.3d 478, 481-484 (8th Cir. 2008).

#### 2.  Claim 2

Moore claims that his mail was impermissibly interfered with and references attachments that discuss two instances of such complaints. (Doc. Nos. 5, p.5; 5-3; & 5-4). The uncontradicted information with respect to the first is that it involved an incoming letter from the Department of Labor. (Doc. No. 5-3). This does not qualify as "legal" mail that is subject to special procedures regarding its handling in order to preserve attorney-client confidences. E.g., Moore v. Hoeven, 2008 WL 1902451, at *11-12 (discussing relevant cases). The fact that the opening of this mail item may

have violated NDSP's own mail policies does not itself give rise to a constitutional violation. E.g., Moore v. Rowley, 126 Fed.Appx. 759, 760-761 (8th Cir.2005) (unpublished per curiam); Moore v. Schuetzle, 486 F. Supp. 2d at 989.

The uncontradicted facts with respect to the second piece of mail are that it was intended to be outgoing mail, which was returned to him as a favor after it was found on his tier. The outer envelope had merely been torn, and it contents were not examined. (Doc. No. 5-4). This also is not sufficient to state a claim. See Moore v. Schuetzle, 486 F. Supp. 2d at 989-990 (holding similar allegations of "torn mail" insufficient to state a constitutional violation).

### 3. Claim 3

Claim 3 involves an allegation of failure to comply with a prison policy of attempting to respond to prisoner grievance within seven days. (Doc. Nos. 5, pp. 5-6; 5-5; & 5-15). On its face, this Claim fails to state a federal constitutional violation based on the authority cited above.

### 4. Claim 4

Claim 4 involves two disciplinary convictions for spending time conversing with other inmates, which is prohibited by NDSP's policies when performing janitorial duties on the administrative segregation tier. The punishment for both violations was restriction to quarters for 15 days. (Doc. Nos. 5, p. 6; 5-6; 5-7).

Under the circumstances, Moore's conclusory allegations of a denial of equal protection based on race are insufficient. E.g., Davis v. Baughman, 262 Fed.Appx. 728, 2008 WL 304068 (8th Cir. 2008) (unpublished per curiam); McCauley v. Dormire, 245 Fed.Appx. 565, 567, 2007 WL 2404729, at *1 (8th Cir. 2007) (unpublished per curiam). Also, given the punishment, Moore has

failed to meet the Sandin threshold with respect to his claim of denial of due process. Sandin v. Conner, 515 U.S. 472, 483-86 (1995); McCauley v. Dormire, supra.

   **5. Claim 5**

Claim 5 involves a claim of retaliation with respect to a disciplinary conviction arising out of Moore having filed a report with the National Center for Missing and Exploited Children alleging misconduct on the part of one of the prison staff. The attached records indicate that Moore received one-month's loss of good time as part of his penalty. (Doc. Nos. 5, p. 6; 5-8; 5-9; 5-10). This claim is Heck barred because success could impact the duration of Moore's sentence. Edwards v. Balisok, 520 U.S. 641 (1997); Preiser v. Rodriguez, 411 U.S. 475 (1973); see Wilkinson v. Dotson, 544 U.S. 74, 81-81 (2005); Heck v. Humphery, 512 U.S. 477 (1994).

Moreover, even aside from the Heck bar, there is no claim based on the uncontradicted facts. Moore does not deny having made the charge of misconduct to the National Center for Missing and Exploited Children, and there is some evidence supporting the disciplinary conviction. Hartsfield v. Nichols, 511 F.3d 826, 831 (8th Cir. 2008) (holding that "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker"). The fact that there is "some evidence" negates any claim of a constitutional violation, even if the making of the disciplinary charge was retaliatory. See, e.g., Superintendent v. Hill, 472 U.S. 445, 455-456 (1985); id.

 **C. Other problems with Moore's complaint**

Moore's complaint does not state which NDSP staff or officials were involved in the specific claims, much less allege what their personal involvement was. While in some instances it may be

12

possible to surmise which of the named defendants Moore intends to sue with respect to particular claims based upon the attachments, the defendants, at least to the extent that they are named in their individual capacities, should not have to guess as to what claims they are required to defend and on what basis.  In short, the complaint fails to give fair notice to the defendants, to the extent they are being sued in their individual capacities, as to the claims being brought against them as well as the basis for the claims.

The lack of specificity is also a problem for the claims against a number of the defendants, *e.g.*, NDDOCR Director Bertsch and Warden Schuetzle, who it appears are being sued only in their supervisory capacities or because they had ruled on one or more of Moore's grievances or disciplinary convictions. Neither is likely to state a cognizable claim against the defendants in their individual capacities for damages. See, e.g., Ashcroft v. Iqbal, 129 S.Ct. at 1948 (no supervisory capacity liability under § 1983); George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (merely ruling against a prisoner on an administrative complaint does not cause or contribute in most cases to a completed act of alleged misconduct as a matter of law).

It also appears likely that Moore's complaint violates Fed. R. Civ. P. 18(a) in terms of misjoinder of claims, particularly when the lawsuit is stripped of claims against individual

13

defendants who had no personal involvement.  See, e.g., George v. Smith, 507 F.3d at 607;[10] Alexander v. Tilton, No. :07-cv-00759, 2009 WL 464486, at ** 2-5 (E.D. Cal. Feb. 24, 2009).

Finally, to the extent the suit seeks damages against the defendants in their official capacities, the claims are against the State of North Dakota, since all of the defendants are state employees, and the State has Eleventh Amendment immunity from any claim for damages.  Monroe v. Arkansas State University, 495 F.3d 591, 594 (8th Cir. 2007); Alsbrook v. City of Maumelle, 184 F.3d 999, 1010 (8th Cir. 1999).

### D.   Motions to "Disqualify Defendant Federal Judges" and "Reassign Case"

Moore requests that all members of the federal judiciary in the District of North Dakota be disqualified from this case on the grounds that they are named defendants. Moore's complaint, however, neither identifies any members of the federal judiciary as defendants nor sets forth any claims against the judiciary.[11]  Rather, it merely expresses Moore's belief that he will not receive a fair hearing by any of the judges in this district, which is not a claim.  Moreover, Moore should

---

[10] In observing that the PLRA does not supercede the civil rules of procedure governing joinder, the Seventh Circuit stated the following in George v. Smith, supra:
> The district court did not question George's decision to join 24 defendants, and approximately 50 distinct claims, in a single suit. It should have done so. The controlling principle appears in Fed.R.Civ.P. 18(a): "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

507 F.3d at 607.

[11] The statement that the judges in this District are all named defendants may have been intended to refer, instead, to the fact that Moore named all of the judges in this district as defendants in proposed complaints that he filed in another action that is currently pending. However, in that case, the members of the federal judiciary were dismissed at the time of the § 1915A screening.  See  Moore v. Hoeven, 3:08-cv-00050, Doc. Nos. 39 & 43 (Report and Recommendation filed Oct. 16, 2008, and Order Adopting Report and Recommendation filed on Nov. 5, 2008).

not be allowed to manipulate this court or effectuate a change of judge simply by naming the judges of this District as defendants in a civil complaint.

It is recommended that the motions requesting disqualification and reassignment (Doc. Nos. 6 & 10) be denied.

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED**:

1. That Moore's application to proceed *in forma pauperis* (Doc. Nos. 4 & 9) be **DENIED**.

2. That motions seeking disqualification of judges and reassignment (Doc. Nos. 6 & 10) be **DENIED**.

2. That the complaint be **DISMISSED** without prejudice.

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civ. L. R. 72.1(D)(3) any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken.

Dated this 1st day of July, 2009.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge